# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THE NEW PARK MANOR, INC., | ) |
| Plaintiff, | ) |
| v. | ) No. 13 C 4537 |
| NORTH POINTE INSURANCE COMPANY, | ) Magistrate Judge Finnegan |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff The New Park Manor, Inc. has filed suit against Defendant North Pointe Insurance Company for breach of contract (Count I), vexatious and unreasonable delay and/or conduct under Section 155 of the Illinois Insurance Code, 215 ILCS 5/155 (Count II), and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2 *et seq.* (Count III). Currently before the Court is Defendant's motion to strike paragraph 38 and Count III of Plaintiff's Complaint. For the reasons set forth here, the motion is granted in part and denied in part.

## BACKGROUND[1]

Plaintiff is an Illinois corporation that owned and operated an independent bowling center located in Chicago, Illinois (the "Property"). (Cmplt. ¶ 3; Doc. 13, at 2). In 2010, Plaintiff applied for insurance with Defendant, a Pennsylvania corporation with its principal place of business in Wisconsin, based on its claim to offer "comprehensive insurance programs with coverages tailored to the unique operations of bowling

---

[1] In reviewing this motion, the Court accepts the Complaint's factual allegations as true and draws all reasonable inferences in Plaintiff's favor. *Gessert v. United States*, 703 F.3d 1028, 1033 (7th Cir. 2013).

centers." (Cmplt. ¶ 5; Doc. 13, at 2). Defendant accepted the application and issued a policy covering the "building, personal property and business income pertaining to the Property for the period July 28, 2010 to July 28, 2011" (the "Policy"). (Cmplt. ¶ 6). Plaintiff paid all necessary premiums and otherwise complied with the requirements and conditions of the Policy. (*Id.* ¶ 9).

**A. The Insurance Claim**

On July 11, 2011, the bowling center's roof collapsed causing damage to the building and the personal property located inside. (*Id.* ¶ 10). Upon receiving Plaintiff's loss report, Defendant initiated an investigation of the Claim (No. P0004408), and made "advance payments" in September 2011 totaling $214,300. (*Id.* ¶¶ 12, 13). Thereafter, however, Defendant did not:

> (i) make any further payment on the Claim; (ii) . . . timely request any further documentation from [Plaintiff]; (iii) . . . keep [Plaintiff] apprised of its ongoing investigation in a timely fashion; [or] (iv) . . . attempt in good faith to effectuate prompt, fair and equitable settlement of the Claim, despite clear liability.

(*Id.* ¶ 14). On March 27, 2012, Defendant's Senior Claims Analyst, Terence G. Grabowski, sent Plaintiff an email asking the company to "review the following settlement evaluation and let me know if you are in agreement." (Ex. 3 to Cmplt., Doc. 23-1, at 52). Mr. Grabowski proposed that Defendant pay Plaintiff $545,200 for "Building Damage," and $710,000 for "Contents Damage," but noted that "your final claim for damages must be established by you." (*Id.* at 52-53).

Plaintiff says that it accepted the settlement figures but then did not hear from Defendant for a little more than a month, leading Plaintiff to believe that "Defendant was making no effort to complete its investigation or to pay the Claim." (Cmplt. ¶ 17). Thus,

2

on May 1, 2012, Plaintiff sent Defendant a Sworn Statement in Proof of (Partial) Loss in the amount of $545,200 for the damage to the building, and a detailed claim for personal property loss in the amount of $710,000. (*Id.*). Though the requested amounts were identical to those proposed by Mr. Grabowski, Defendant asked that (1) Plaintiff submit additional supporting documentation, and (2) Plaintiff's principals, Manish Patel and Kamlesh Patel, submit to an examination under oath. (*Id.* ¶ 18). Plaintiff complied with both requests and "otherwise cooperated with Defendant's investigation." (*Id.* ¶¶ 19, 20).

Thereafter, Plaintiff was "compelled to make several more requests to Defendant for status and resolution of the Claim." (*Id.* ¶ 22). Finally, on January 23, 2013, Defendant sent Plaintiff a letter denying all liability. (*Id.* ¶ 23). This decision was "predicated on, among other reasons, fraud, false swearing, material misrepresentation, claim inflation, and a failure to produce adequate documents in support of the damages claimed to have been damaged or destroyed [sic] on or about July 11, 2011." (*Id.* ¶ 24; Ex. 4 to Cmplt., Doc. 23-1, at 56). However, Defendant "failed to provide any example or explanation to support" these conclusions. (Cmplt. ¶ 25).

**B.     Plaintiff's Lawsuit**

Plaintiff filed suit against Defendant in the Circuit Court of Cook County alleging breach of contract, vexatious and unreasonable delay and/or conduct under Illinois Insurance Code Section 155, and violation of the ICFA. Defendant timely removed the case to federal court under diversity jurisdiction, and the parties consented to proceed before the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Defendant has answered Count I and most of Count II of the Complaint, but seeks to strike

paragraph 38 of Count II and all of Count III for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## **DISCUSSION**

In evaluating the sufficiency of a complaint under Rule 12(b)(6), the Court must "construe it in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in [the nonmoving party's] favor." *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). "To survive a motion to dismiss, the plaintiff must do more in the complaint than simply recite elements of a claim; the 'complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Zellner v. Herrick*, 639 F.3d 371, 378 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. *See also Bausch v. Stryker Corp.*, 630 F.3d 546, 558 (7th Cir. 2010). Although a "formulaic recitation of the elements of a cause of action will not do," *id*. at 678, a plaintiff need provide "only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Reger Development, LLC v. National City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008)).

**A.     Paragraph 38**

Defendant first objects that Plaintiff has improperly invoked Section 154.6 of the Illinois Insurance Code to support its claim under Section 155. Section 155 provides a private cause of action where an insurer has handled a claim in a "vexatious and

4

unreasonable" manner. 215 ILCS 5/155; *Area Erectors, Inc. v. Travelers Property Cas. Co. of America*, 2012 IL App (1st) 111764 ¶ 32, 981 N.E.2d 1120, 1127 (2012) ("Section 155 was enacted by the legislature to provide a remedy to an insured who encounters unnecessary difficulties when an insurer withholds policy benefits."). Conversely, there is no private cause of action available under Section 154.6, which is regulatory in nature. *Sarac v. Minnesota Life Ins. Co.*, 529 F. Supp. 2d 924, 930 (N.D. Ill. 2007) (citing *American Serv. Ins. Co. v. Passarelli*, 323 Ill. App. 3d 587, 590, 752 N.E.2d 635, 639 (1st Dist. 2001)). Rather, the section identifies "acts by a company, [which] if committed without just cause and in violation of Section 154.5, constitutes an improper claims practice," 215 ILCS 5/154.6, and allows the State Director of Insurance to charge the company and order such practices to cease. *Passarelli*, 323 Ill. App. 3d at 590, 752 N.E.2d at 639.

Paragraph 38 of Count II simply alleges that "the Illinois Insurance Code provided as follows" and then recites (in part) what is set forth in Section 154.6, including some of the acts that constitute improper claims practice under certain conditions. Plaintiff concedes that it has no cause of action under that section, but argues that it is nonetheless relevant because it "provides applicable standards and prohibited conduct" and so "violations of the [Code] can serve as evidence to show bad faith." Plaintiff then reasons that paragraph 38 should not be stricken since Section 154.6 "is merely used to serve as examples of alleged improper claims practice committed by North Pointe while seeking the remedies prescribed in Section 155." (Doc. 23, at 7-8). In support of this theory, Plaintiff cites *O'Connor v. Country Mut. Ins. Co.*, 2013 IL App (3d) 110870, __ N.E.2d __ (2013), where the plaintiff made that exact argument. *Id*. ¶ 4. This case is

not particularly informative, however, since the Illinois Appellate Court observed that while the trial court "seemingly considered [the plaintiff's] section 154.6 allegations as factors in reaching its section 155 determination," it did not "specifically determin[e] whether section 154.6 presents a standard applicable to evaluate section 155 claims." *Id.* ¶¶ 14, 16. The Appellate Court similarly did not make such a determination. Instead, the court upheld the trial court's conclusion that the defendant had not in fact violated any provisions of Section 154.6, and indicated that the court "was not required as a matter of law" to make such a finding. *Id.* ¶ 16.

Defendant argues that looking to Section 154.6 to prove a violation of Section 155 "would be an outright rejection of the principal that a violation of Section 155 is determined by looking at the totality of the circumstances." (Doc. 24, at 3) (citing *Area Erectors*, 2012 IL App (1st) 111764 ¶ 32, 981 N.E.2d at 1127). But defendant does not cite any case affirmatively holding that Section 154.6 is irrelevant when assessing whether conduct is unreasonable and vexatious under Section 155. Moreover, "[m]otions to strike are generally not favored, and the court will not strike matter from a complaint unless it is clear that it can have no possible bearing on the subject matter of the litigation." *Burke v. Chicago Sch. Reform Bd. of Trustees*, 169 F. Supp. 2d 843, 846 (N.D. Ill. 2001) (internal quotations omitted).

At this stage of the proceedings, the Court declines to strike paragraph 38 of the Complaint. There is no misstatement in paragraph 38 since it merely sets forth the language in Section 154.6, and does not allege that an "improper claims practice" under that section constitutes "vexatious and unreasonable" conduct within the meaning of Section 155. Further, since the Section 155 claim will be decided by this Court rather

6

than a jury, there is no danger of conflating the two sections or applying the wrong standard. Finally, this Court is not persuaded that it is impermissible, when determining whether conduct is vexatious and unreasonable under the totality of the circumstances, to consider as one factor whether the conduct is labeled an improper claims practice under Section 154.6. For example, if Defendant were to argue not only that it did not engage in certain alleged conduct but also that such conduct (if proved) is acceptable and customary in the industry, this Court sees no reason why Plaintiff could not offer evidence that such conduct is identified as an improper claims practice under the Insurance Code. Assuming the Court agreed, it could then consider this circumstance among the totality of circumstances in determining whether the conduct was vexatious and unreasonable.

**B.  Count III**

Defendant also seeks to dismiss Plaintiff's ICFA claim (Count III), arguing that it has not been pled with the requisite specificity under Rule 9(b), and is merely an attempt to "allege a breach of contract claim as a fraud claim." (Doc. 13, at 4). To state a claim under the ICFA, Plaintiff must allege:  (1) a deceptive act or practice by Defendant; (2) Defendant's intent that Plaintiff rely on the deception; (3) that the deception occurred in the course of conduct of trade or commerce; (4) actual damage to Plaintiff; and (5) that the damage was proximately caused by Defendant. *Pirelli Armstrong Tire Corp. v. Walgreen Co.*, No. 09 C 2046, 2009 WL 2777995, at *4 (N.D. Ill. Aug. 31, 2009) (citing *Cozzi Iron & Metal, Inc. v. United States Office Equip.*, 250 F.3d 570, 575-76 (7th Cir. 2001) and *Gredell v. Wyeth Labs., Inc.*, 367 Ill. App. 3d 287, 290, 854 N.E.2d 752, 756 (1st Dist. 2006)). A complaint alleging fraud under the ICFA

"must be pleaded with the same particularity as common law fraud and must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b)." *Id.* To meet this heightened standard, Plaintiff must allege "the identity of the person making the representation, the time, place and contents of the misrepresentation, and the method by which the misrepresentation was communicated." *Id.* In other words, Rule 9(b) requires "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

Defendant argues that Plaintiff's ICFA claim must fail because it is "nothing more than a restatement of its claim that Defendant breached its contract with Plaintiff." (Doc. 24, at 4). Defendant directs the Court to *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392 (7th Cir. 2011), where the plaintiff alleged that the defendant violated the ICFA by "falsely promising to restore its insureds' vehicles to their preloss condition and failing to disclose to policyholders that it would not keep this promise." *Id.* at 399. The Seventh Circuit held that these allegations were "nothing more than restatements of the claimed breach of contract, albeit using the language of fraud." *Id.* In that regard, "a 'deceptive act or practice' involves more than the mere fact that a defendant promised something and then failed to do it. That type of 'misrepresentation' occurs every time a defendant breaches a contract." *Id.* (quoting *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 169, 835 N.E.2d 801, 844 (2005)).

Defendant maintains that as in *Greenberger*, Plaintiff has merely alleged that Defendant promised to pay a certain amount for a certain type of loss on the Property and then failed to do so – a standard breach of contract claim. (Doc. 13, at 4-5). To be sure, the ICFA is "not intended to apply to every contract dispute or to supplement every

8

breach of contract claim with a redundant remedy." *Greenberger*, 631 F.3d at 399 (quoting *Zankle v. Queen Anne Landscaping*, 311 Ill. App. 3d 308, 312, 724 N.E.2d 988, 992-93 (2d Dist. 2000)). That said, "[i]t is well settled that an insurer may engage in conduct that gives[s] rise to both a breach of contract action and a separate and independent tort action." *Burress-Taylor v. American Sec. Ins. Co.*, 2012 IL App (1st) 110554 ¶ 28, 980 N.E.2d 679, 687-88 (2012) (internal quotations omitted). Thus, "[a] plaintiff may bring an independent tort action for insurer misconduct if the plaintiff alleges and proves the elements of the separate tort." *Id.*, 980 N.E.2d at 688 (quoting *Young v. Allstate Ins. Co.*, 351 Ill. App. 3d 151, 169, 812 N.E.2d 741, 758 (1st Dist. 2004)).

Plaintiff insists that its fraud allegations involve more than Defendant's failure to fulfill a contractual promise. Notably, Plaintiff does not cite to any of the specific allegations in Count III to support this claim, likely because they are identical to those set forth in Counts I and II. For example, Plaintiff says Defendant (1) claimed to offer comprehensive insurance for bowling centers; (2) inspected the Property and helped Plaintiff apply for insurance; and (3) agreed to pay certain amounts for certain losses. (Cmplt. ¶ 49a-e). Plaintiff then alleges that Defendant unreasonably failed to pay a claim under the policy; failed to properly investigate the claim; and wrongfully charged Plaintiff with fraud, claim inflation, and failure to provide adequate supporting documentation, forcing Plaintiff to file this lawsuit. (*Id.* ¶ 50a-d). None of these allegations goes beyond Plaintiff's Section 155 claim of vexatious and unreasonable conduct or "rise[s] to the level of a well-established tort." *Burress-Taylor*, 2012 IL App (1st) 110554 ¶ 27, 980 N.E.2d at 687.

Apparently realizing this problem, Plaintiff directs the Court instead to its allegations regarding Mr. Grabowski's March 27, 2012 settlement evaluation email, noting that he proposed a "Settlement Resolution" amount of $545,200 for "Building Damage," and $710,000 for "Contents Damage." Plaintiff claims that it relied on and agreed to the figures stated in that email, submitting to Defendant "an executed Sworn Statement in Proof of (Partial) Loss and detailed claim for damage to [the] building and personal property" in those precise amounts. (Doc. 23, at 11; Cmplt. ¶¶ 15, 17). Rather than paying the claim, Defendant demanded more documentation and asked that Plaintiff's principals submit to examination under oath. (Doc. 23, at 11-12; Cmplt. ¶ 18). Plaintiff complied with these requests by late August 2012, but on January 23, 2013, Defendant rejected the claim and accused Plaintiff of unspecified "fraud, false swearing, material misrepresentation, claim inflation, and a failure to produce adequate documents in support of the damages claims." (Doc. 23, at 12; Cmplt. ¶¶ 19-25).

The Court does not see how this sequence of events constitutes a deceptive practice under the ICFA that is separate and distinct from a breach of contract claim. Mr. Grabowski's email expressly stated that "your final claim for damages must be established by you," which certainly leaves open the possibility that Defendant would not ultimately accept the figures in the settlement document. (Doc. 23-1, at 52). Plaintiff fails to address this language or explain how Defendant's decision to deny coverage was fraudulent or deceptive as opposed to merely vexatious and unreasonable. For this reason, the facts presented here are easily distinguishable from those in *General Ins. Co. of America v. Clark Mali Corp.*, No. 08 C 2787, 2010 WL 1286076 (N.D. Ill. Mar. 30, 2010), cited extensively in Plaintiff's brief. (Doc. 23, at 9-11).

10

The insureds in *Clark Mali* alleged that their insurer (1) made "an endless series of requests for documents"; (2) "obtained sworn statements from employees"; (3) "subjected one of the [insureds, Mr. Park,] to fifteen hours of sworn testimony over three days"; (4) "interviewed [the insureds'] accountants and public adjuster"; (5) demanded information that "had nothing to do with the incident"; (6) "required four more hours of testimony from Mr. Park"; (7) "requested still more documents, some duplicating those [the insureds] had already provided"; and (8) "would not even give [the insureds] an idea of how much more they had to go through before their claim would be settled one way or the other." 2010 WL 1286076, at *1-2. The insurer moved to dismiss for failure to state a claim, arguing that the insureds had alleged nothing more than breach of contract. *Id.* at *4.

In denying the motion, the court held that "[s]tringing the insureds along with the intimation that things were progressing toward a resolution when, in reality, there is no end in sight, making unreasonable and irrelevant demands, and never providing a definite answer certainly qualifies as an allegation of deception and intent that the other party rely on that deception." *Id.* As the court explained, "[w]hen . . . the non performance [under a contract] is concealed under a façade of compliance with one's contractual obligations and a series of dilatory, deceptive and punitive maneuvers designed to mask that non performance," the conduct goes beyond breach of contract and becomes indicative of fraud. *Id.* at *5. *See also Philadelphia Indem. Ins. Co. v. Chicago Title Ins. Co.*, No. 09 C 7063, 2011 WL 2731254, at *1, 2 (N.D. Ill. July 12, 2011) (allegations that plaintiff was misled into purchasing a title insurance policy with terms different from those required by the parties' letter agreement, and that the

defendant "stalled and failed to respond" to the plaintiff's coverage requests and, "in bad faith, evaded its contractual obligations," was sufficient to state a claim under the ICFA).

Unlike the plaintiff in *Clark Mali*, Plaintiff does not allege that Defendant pretended to comply with its contractual obligations, repeatedly made unreasonable and irrelevant demands as a delay tactic, and engaged in behavior designed to mask its deceptive acts and "set up the insured for a claim o[f] non-cooperation." 2010 WL 1286076, at *5. Nor are there sufficiently developed allegations that Defendant somehow acted in "bad faith" or lied to Plaintiff about the course of the investigation. *Cf. Burress-Taylor*, 2012 IL App (1st) 110554 ¶¶ 32, 33, 980 N.E.2d at 689 (alleging that the defendant "consistently inform[ed] Plaintiff" that it was working with a second insurer to determine coverage amounts "when in reality neither company was actively pursuing the issue," resulting in the defendant "failing to inform plaintiff of a resolution of the conflict . . . within the one-year limitation period" and then "rais[ing] the one-year limitation as a defense" to the plaintiff's lawsuit).

In the Court's view, Plaintiff's allegations are more comparable to those found inadequate in *Western Howard Corp. v. Indian Harbor Ins. Co.*, No. 10 C 7857, 2011 WL 2582353 (N.D. Ill. June 29, 2011). The plaintiff in *Western Howard Corp.* alleged that the defendant "failed to pay [a] claim, made 'bad faith' demands for documents, conducted a burdensome investigation, delayed in resolving the claim, rested the denial of the claim on the actions or inactions of [the plaintiff] or its agents, and represented in its policy that 'it would pay valid claims,' when in fact it has not paid." *Id.* at *5. The court held that "[a]t bottom, Plaintiff's fraud claims are based on [the defendant's] failure to pay in accordance with its obligations under the policy and to fairly investigate the

claim." *Id*. Though the plaintiff tried to "shoehorn these failures into fraud," its conclusory allegations regarding a "scheme to defraud" were "simply . . . not enough." *Id*. *See also Leona's Pizzeria, Inc. v. Northwestern Nat'l Cas. Co.*, 203 F. Supp. 2d 930, 933 (N.D. Ill. 2002) ("A claim that an insurer is 'lying after the fact to avoid paying [a] claim' amounts to no more than a claim for denial of benefits and breach of contract, and is preempted by § 155.").

In this case, Plaintiff clearly believes that Defendant mishandled its claim and acted unreasonably in accusing the company of unspecified claim inflation, fraud and misrepresentation. (Doc. 23, at 12). As in *Western Howard Corp.*, however, "none of Plaintiff['s] claims amount to more than a claim for bad faith denial of a claim under the policy." 2011 WL 2582353, at *5. Defendant's motion to dismiss Count III is therefore granted.

## **CONCLUSION**

For the reasons stated above, Defendant's Rule 12(b)(6) Motion to Strike Paragraph 38 and Count III of Plaintiff's Complaint (Doc. 12) is granted in part and denied in part.

ENTER:

Dated: September 26, 2013

_____
SHEILA FINNEGAN
United States Magistrate Judge